## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

DAISY BESSON
4018 Javins Drive
Alexandria, VA 22310

      Plaintiff,

      v.

KPMG, LLP
1801 K Street NW, Suite 12000
Washington, DC 20036

      Defendant.

Civil Action No. 13-1506

## COMPLAINT AND DEMAND FOR JURY TRIAL

1.      Plaintiff Daisy Besson was subjected to discrimination and retaliation on the basis of her disability, bipolar disorder, when her employer, KPMG, LLP, terminated her rather than making reasonable accommodations that would have allowed her to fulfill her job duties. Ms. Besson brings this action under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* She seeks declaratory relief, back pay and all other lost employment benefits, compensatory damages, actual damages, punitive damages, injunctive relief including, but not limited to reinstatement, or, in the alternative, front pay, and all of the costs and expenses of this action, including attorney's fees.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f).

3.      Venue is proper in this district under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).

**PARTIES**

4.      Ms. Besson is a former employee of KPMG's Washington, D.C. office.

5.      Defendant KPMG is a multinational audit, tax, and accounting firm with approximately 150,000 employees in offices throughout the world.

**FACTS**

6.      Ms. Besson was hired by KPMG as a schedule coordinator on June 22, 1998.

7.      Ms. Besson worked for KPMG for approximately twelve years in the Resource Management Department of the Washington, D.C. office. Ms. Besson was good at her job and consistently received positive performance evaluations.

8.      Ms. Besson was diagnosed with bipolar disorder when she was in her teens. She manages her disability through a combination of medication, behavioral therapy, and periodic hospitalizations.

9.      In April 2000, Ms. Besson notified KPMG of her bipolar disorder when she requested short-term medical leave to receive treatment for her condition.

10.      At that time, Ms. Besson disclosed her disability to Brian Seney, her supervisor at KPMG.

11.      KPMG accommodated Ms. Besson's request for a short-term medical leave in April 2000.

12.      In October 2003, Ms. Besson submitted to KPMG's Human Resources Office a note from her physician requesting to adjust her hours or transfer to an office closer to her family to aid in the management of her disability. KPMG did not respond to the request and did not provide an accommodation.

13.     On June 16, 2004, Ms. Besson's job title was changed to Senior Associate Resource Manager, which required that she perform the same duties she had been performing. In subsequent years, her duties increased.

14.     In 2005, an opportunity for promotion arose at KPMG for which Ms. Besson and Maureen Mooney—a coworker with less experience at KPMG and less educational background—both expressed interest. Ms. Mooney received the promotion over Ms. Besson. When Ms. Besson asked Mr. Seney why she had not received the promotion, he replied that Ms. Besson had communication problems. Mr. Seney also told Ms. Besson that her condition was preventing her from moving up in the company.

15.     In December 2007, seven years after her first leave of absence, Ms. Besson requested and was granted another short-term leave of absence to receive medical treatment for her disability.

16.     When Ms. Besson returned to the office after her December 2007 short-term medical leave, Mr. Seney made derogatory comments about her disability. On one occasion, Mr. Seney asked Ms. Besson whether this was going to happen again, referring to her medical leave. He also made comments to Ms. Besson insinuating that managers from other departments were using her condition against the Resource Management team.  When Ms. Besson asked what the latter comments meant, Mr. Seney referred to Ms. Besson's disability.

17.     Ms. Besson's coworkers also made derogatory comments about her disability when she returned to the office after her short-term medical leaves of absence.  One coworker, Maureen Mooney, told Ms. Besson that she was "born special" and refused to elaborate on what that meant. Ms. Besson believed it to be a reference to her disability.

18.     In the spring of 2008, Ms. Besson asked Mr. Seney for permission to leave early once per week to see her psychologist, which he initially allowed. After a short period, however,

Mr. Seney informed Ms. Besson that she would no longer be allowed to have this accommodation because it was negatively affecting their team.

19.     In July 2008, Ms. Besson called Rebecca Berry—a manager in KPMG's Human Resources Office—to complain about Mr. Seney's decision to prevent her from visiting her doctor during the workweek.  Ms. Berry told Ms. Besson that she should work out this problem with Mr. Seney directly.  Neither Ms. Berry nor anyone else in KPMG's Human Resources Office followed up with Ms. Besson on this matter, nor did Ms. Besson receive any official documentation that her complaint had been made.

20.     In January 2009, Ms. Besson again requested short-term medical leave to manage her bipolar disorder and submitted the appropriate leave of absence request form. At the request of the KPMG Human Resources Office, Ms. Besson provided documents from her doctor confirming her need for leave. KPMG approved Ms. Besson's request for short-term medical leave.

21.     Ms. Besson received short-term disability benefits during her short-term medical leave through Prudential insurance company.

22.     On March 18, 2009, Ms. Besson left a voicemail for Mr. Seney notifying him that her doctor had cleared her to return to work on March 31, 2009.

23.     On March 19, 2009, Mr. Seney and Connie Sherman, a KPMG Human Resources manager, called Ms. Besson and told her that KPMG was downsizing and, consequently, had eliminated her position.

24.     Shortly afterward, Ms. Besson received a letter from KPMG dated March 19, 2009, informing her that she would be terminated once she was "cleared from disability status" by Prudential.

25.     Ms. Besson found evidence suggesting that her position had not been eliminated, but rather that she had been replaced by a coworker.

26.     As a result of learning that she would be terminated by KPMG, Ms. Besson's mental health began to deteriorate.

### EQUAL EMPLOYMENT  PROCESS

27.     In March 2009, Ms. Besson submitted a complaint form to the District of Columbia Office of Human Rights (DCOHR) alleging that KPMG had discriminated against her on the basis of her disability.  DCOHR is a fair employment practices agency that investigates and adjudicates claims of discrimination brought by people who live or work in the District of Columbia.

28.     On May 7, 2009, Ms. Besson attended a scheduled intake interview at DCOHR. DCOHR told Ms. Besson that her complaint could not be processed or investigated until she was no longer receiving disability insurance benefits when her termination would become effective.

29.     Ms. Besson received short-term disability benefits until July 15, 2009. Between July 16, 2009 and July 15, 2011, Ms. Besson received long-term disability benefits.

30.     Ms. Besson twice requested reconsideration of her disability insurance company's decision to terminate her benefits in July 2011. In late February 2012, Ms. Besson received final notification that Prudential had denied her final appeal of its decision to terminate her benefits.

31.     Ms. Besson received a letter from KPMG dated March 22, 2012 informing her that her termination from the firm was effective on that date.

32.     After receiving her final termination letter in March 2012, Ms. Besson returned to DCOHR to complain that KPMG had discriminated against her on the basis of her disability.

33.     In April 2012, Ms. Besson received a letter from DCOHR, dated April 2, 2012, scheduling an intake interview on April 11, 2012. Ms. Besson attended the intake interview and finalized her complaint with DCOHR.

34.     DCOHR investigated Ms. Besson's complaint against KPMG.

35.     On February 8, 2013, DCOHR notified Ms. Besson that DCOHR found no probable cause for discrimination.

36.     DCOHR has a worksharing agreement with the federal Equal Employment Opportunity Commission (EEOC). Ms. Besson's complaint to DCOHR was cross-filed with the EEOC under that worksharing agreement.

37.     EEOC issued a Notice of Right to Sue dated July 8, 2013, which is attached as Exhibit 1 and incorporated into this Complaint by reference.

**COUNT I**
**DISCRIMINATORY TERMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

38.     The allegations of paragraphs 1–37 are incorporated by reference.

39.     Termination of an employee on the basis of disability constitutes disparate treatment based on disability in violation of the Americans with Disabilities Act (ADA). 42 U.S.C. § 12112(a).

40.     Ms. Besson suffers from bipolar disorder and is a qualified person with a disability under the ADA. 42 U.S.C. §§ 12102, 12112(a).

41.     KPMG violated the ADA when it terminated Ms. Besson based on her disability.

## COUNT II
## FAILURE TO REASONABLY ACCOMMODATE DISABILITY
## IN VIOLATION OF THE
## AMERICANS WITH DISABILITIES ACT

42.     The allegations of paragraphs 1–37 are incorporated by reference.

43.     An employer that fails to take reasonable steps to accommodate an otherwise

qualified employee's disability violates the ADA. 42 U.S.C. §12112(a), (b)(5).

44.     Ms. Besson suffers from bipolar disorder and is a qualified person with a

disability under the ADA. 42 U.S.C. §§12102, 12112(a).

45.     KPMG violated the ADA when it failed to grant a reasonable accommodation to

Ms. Besson, a qualified person with a disability.

## COUNT III
## RETALIATION BASED
## ON ACTIVITY PROTECTED UNDER
## THE AMERICANS WITH DISABILITIES ACT

46.     The allegations of paragraphs 1–37 are incorporated by reference.

47.     An employer's retaliation against an employee based on the employee's request

for an accommodation for a disability violates the ADA. 42 U.S.C. §12203.

48.     Ms. Besson suffers from bipolar disorder and is a qualified person with a

disability under the ADA. 42 U.S.C. §§12102, 12112(a).

49.     KPMG violated the ADA when it retaliated against Ms. Besson because she

requested accommodations for her disability.

## RELIEF

50.     Ms. Besson seeks the following relief:

        a.      a declaration that KPMG unlawfully discriminated against Ms. Besson

        because of her disability;

b.      a declaration that KPMG unlawfully failed to grant Ms. Besson's reasonable requests for accommodation;

c.      a declaration that KPMG unlawfully retaliated against Ms. Besson because she requested accommodations for her disability;

d.      reinstatement, or, in the alternative, front pay;

e.      back pay and all other lost employment benefits;

f.      compensatory damages for emotional distress, humiliation, embarrassment, harm to her career, loss of income, and mental anguish;

g.      actual damages, including, but not limited to, compensation for hospital expenses incurred after KPMG's wrongful and unlawful treatment of Ms. Besson caused the conditions of her disability to worsen;

h.      punitive damages;

i.      costs and expenses of this action, including, but not limited to, reasonable attorney's fees and litigation costs; and

j.      all other appropriate relief.

## DEMAND FOR JURY TRIAL

51.    Ms. Besson requests a trial by jury on all issues triable by a jury.

Respectfully submitted,

/s/ Anne W. King_____
Anne W. King, D.C. Bar No. 996578
Brian Wolfman, D.C. Bar No. 427491
Institute for Public Representation
Georgetown University Law Center
600 New Jersey Avenue, NW, Suite 312
Washington, DC  20001
(202) 662-9546 (phone)
(202) 662-9634 (fax)
Email: ak682@law.georgetown.edu

Date: September 30, 2013                    Attorneys for Daisy Besson